# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOSEPH GUENTHER, an individual, and MICHELLE G. RYERSON, an individual, | Case No.  1:12-cv-00237-REB |
| Plaintiffs, | **MEMORANDUM DECISION AND ORDER RE:** |
| v. | **PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT AND DEMAND FOR JURY TRIAL (Docket No. 19)** |
| OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY, a Minnesota Corporation, | **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Docket No. 53)** |
| Defendant. | **PLAINTIFFS' MOTION TO STRIKE PORTIONS OF AFFIDAVIT OF RUTH BROWNING (Docket No. 64)** |
| | **DEFENDANT'S MOTION TO STRIKE PORTIONS OF AFFIDAVIT OF JOSEPH GUENTHER IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Docket No. 71)** |

Currently pending before the Court are the following motions: (1) Plaintiffs' Motion for

Leave to Amend Complaint and Demand for Jury Trial (Docket No. 19); (2) Defendant's Motion

for Summary Judgment (Docket No. 53); (3) Plaintiffs' Motion to Strike Portions of Affidavit of

Ruth Browning (Docket No. 64); and (4) Defendant's Motion to Strike Portions of Affidavit of

**MEMORANDUM DECISION AND ORDER - 1**

Joseph Guenther in Opposition to Defendant's Motion for Summary Judgment (Docket No. 71).

Having carefully considered the record, participated in oral argument, and otherwise being fully

advised, the Court enters the following Memorandum Decision and Order:

## I.  GENERAL BACKGROUND

1.      In June 2009, Plaintiffs Joseph Guenther and Michelle G. Ryerson ("Plaintiffs")

purchased a parcel of real property ("Property") in the Boise foothills of Ada County.  The only

physical roadway access to the Property is commonly known as the Barnes Main Access Road,

which intersects with Hill Road, between N. Pierce Park Lane and Seamans Gulch Road:



2.      Part and parcel with the Property's purchase, Plaintiffs contemporaneously

purchased a policy of title insurance ("Policy") from Defendant Old Republic National Title

Insurance Company ("Old Republic"), by and through its issuing agent, Pioneer Title Company

of Ada County ("Pioneer").

**MEMORANDUM DECISION AND ORDER - 2**

3.      The Policy was issued in the amount of $157,900 and, among other things, included the following defects of title as "Covered Risks": (1) "Unmarketable Title"; (2) "No right of access to and from the Land"; and (3) "The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restrictions, regulating, prohibiting, or relating to . . . the occupancy, use, or enjoyment of the Land . . . ." *See* Policy, p. 1, attached as Ex. A to Lloyd Aff. (Docket No. 19, Att. 4).

4.      Shortly after purchasing the Property, Plaintiffs sought approvals/permits to construct improvements on the Property, only to be denied by the applicable governmental authorities because there was no legal right of access to/from the Property.

5.      Owing to a lack of legal access rights to/from the Property, Plaintiffs tendered proof of loss to Old Republic, requesting that it defend and/or indemnify the right of access under, and the marketability of the title to, the Property.

6.      Old Republic denied coverage for any such claim, relying on the fact that unfettered physical access to the Property existed (and has always existed) by way of the Barnes Main Access Road, regardless of any legal right of access to use that roadway.

7.      Through this action, Plaintiffs assert the following claims against Old Republic: (1) Declaratory Judgment – No Right of Access (Count 1); (2) Declaratory Judgment – Policy Coverage Applies (Count 2); (3) Bad Faith Tort (Count 3); (4) Breach of Contract (Count 4); (5) Negligence (Count 5); (6) Breach of Fiduciary Duty (Count 6); (7) Breach of Implied Covenant of Good Faith and Fair Dealing (Count 7); and (8) Intentional Infliction of Emotional Distress (Count 8).

**MEMORANDUM DECISION AND ORDER - 3**

8.     Relevant to this Memorandum Decision and Order, Plaintiffs have since moved to amend their Complaint to, among other things, add a claim for punitive damages against Old Republic, pursuant to Idaho Code section 6-1604.[1]  *See* Mem. in Supp. of Mtn. to Am., pp. 14-17 (Docket No. 19, Att. 1).  Old Republic has also moved for summary judgment, contending that Plaintiffs have continually enjoyed an unfettered right of access to the Property since June 2009 and, therefore, cannot sustain any claims premised upon an underlying breach of the Policy.[2]  *See* Mem. in Supp. of MSJ, pp. 4-10 (Docket No. 53, Att. 1).

## II.  DISCUSSION

**A.     Plaintiffs's Motion for Leave to Amend Complaint and Demand for Jury Trial (Docket No. 19)**

1.     Punitive Damages: The Standard

Claims for punitive damages are substantive in nature and Idaho law is controlling.  *See Strong v. Unumprovident Corp.*, 393 F. Supp. 2d 1012, 1025 (D. Idaho 2005) ("The question of whether to permit a claim for punitive damages is substantive in nature and accordingly is controlled by relevant Idaho case law.") (citing *Doe v. Cutter Biological*, 844 F. Supp. 602, 610

---

[1]  Plaintiffs' additionally sought "to remove a claim that is no longer necessary for this Court to decide," and to add a party – Pioneer – "whose wrongful conduct caused or contributed to the Plaintiffs' damages."  *See* Mem. in Supp. of Mtn. to Am., p. 1 (Docket No. 19, Att. 1). Old Republic does not oppose Plaintiffs' effort to dismiss the Declaratory Judgment – No Right of Access claim (Count 1); therefore, Plaintiffs' Motion for Leave to Amend Complaint and Demand for Jury Trial is granted in this respect.  Moreover, at oral argument, Plaintiffs' withdrew its request to add Pioneer as a defendant; therefore, Plaintiffs' Motion for Leave to Amend Complaint and Demand for Jury Trial is denied (as moot) in this respect.

[2]  Old Republic further questions whether Plaintiffs suffered any insurable damages as a result of the alleged breach of the Policy, while also challenging the balance of Plaintiffs' claims for other factual, legal, and procedural reasons.  *See* Mem. in Supp. of MSJ, pp. 9-20 (Docket No. 53, Att. 1).

**MEMORANDUM DECISION AND ORDER - 4**

(D. Idaho 1994)).  "A prayer for punitive damages is not a stand-alone cause of action, but flows from an underlying cause of action, such as a breach of contract or a tort, when the conduct of a party meets the threshold level of being oppressive and outrageous."  *Boise Tower Assocs. LLC v. Washington Cap. Joint Master Trust*, 2006 WL 1749656, *12 (D. Idaho 2006).  Conduct justifying punitive damages requires "an intersection of two factors: a bad act and a bad state of mind."  *Linscott v. Rainier Nat. Life Ins. Co.*, 606 P.2d 958, 962 (Idaho 1980).  The defendant must (1) act in a manner that was an extreme deviation from reasonable standards of conduct with an understanding of – or disregard for – its likely consequences, and must (2) act with an extremely harmful state of mind, described variously as with malice, oppression, fraud, gross negligence, wantonness, deliberately, or willfully.  *See Myers v. Workmen's Auto Ins. Co.*, 95 P.3d 977, 983 (Idaho 2004).

To satisfy this burden at trial, a plaintiff must demonstrate "by clear and convincing evidence, oppressive, fraudulent, malicious or outrageous conduct by the party against whom the claim for punitive damages is asserted."  *See* Idaho Code § 6-1604(1).  For purposes of a motion to amend, however, a plaintiff does not need to meet this high burden; the plaintiff need only show "a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages."  *See* Idaho Code § 6-1604(2).

The decision to allow a punitive damages claim to go forward is a discretionary one and the "abuse of discretion standard in the context of punitive damages [is] whether there was substantial evidence to support submitting the issue to the jury."  *Vendelin v. Costco Wholesale Corp.*, 95 P.3d 34, 48-49 (Idaho 2004); *see also Kuntz v. Lamar Corp.*, 385 F.3d 1177, 1187 (9th Cir. 2004).

**MEMORANDUM DECISION AND ORDER - 5**

Idaho courts are generally reluctant to allow punitive damages in breach of contract cases, adhering to the principle that such damages "should be awarded cautiously and within narrow limits."  *Cuddy Mountain Concrete Inc. v. Citadel Constr. Inc.*, 824 P.2d 151, 159 (Idaho 1992).  To determine if a contractual breach is compelling enough to allow punitive damages, courts ask if the breaching party acted in bad faith or was oppressive, unreasonable, or irrational.  *See id.* at 160 ("The acts show a lack of professional regard for the consequences of the breach of the contractual agreement.  If a party breaches its duty to act in good faith, it may be liable for . . . punitive damages.").

"When the moving party's claims are reasonably disputed and there is substantial evidence that supports the non-moving party's claims, a motion to amend to assert punitive damages will not be allowed."  *Hardenbrook v. United Parcel Service, Co.*, 2009 WL 3530735, *6 (D. Idaho 2009) (citing *Strong*, 393 F. Supp. 2d at 1026) (finding plaintiff had not established reasonable likelihood of proving by preponderance of evidence "the requisite extremely harmful state of mind and extreme deviation from reasonable standards" because of conflicting evidence) (internal quotation marks, citation, and footnote omitted)).[3]

---

[3]  As Chief U.S. Magistrate Judge Candy Dale explained in *Hardenbrook*:

> *Strong* involved Idaho Code section 6-1604's "preponderance of the evidence" standard before its amendment in 2003.  Section 6-1604 now places a higher burden on the moving party, i.e., a requirement for "clear and convincing evidence."  *See also* Black's Law Dictionary 596 (8th ed. 2004) ("clear and convincing evidence . . . .  This is a greater burden than preponderance of the evidence . . . .").  Thus, the *Strong* standard remains applicable.  That is, if the moving party's claims are reasonably disputed and there is substantial evidence that supports the non-moving party's claims, the moving party has not met its burden under the substantial evidence standard, compelling the same conclusion under an even higher burden of clear and convincing evidence.

*Hardenbrook*, 2009 WL 3530735, *6, n.3.

**MEMORANDUM DECISION AND ORDER - 6**

2.   Discussion

Anchoring its argument in support of an amendment adding a claim for punitive damages against Old Republic, Plaintiffs contend that Michael Shaw, Old Republic's adjuster during the relevant time period, "continually elected to further the financial interests of Old Republic, rather than Plaintiffs as the insured." *See* Mem. in Supp. of Mtn. to Am., p. 15 (Docket No. 19, Att. 1). Specifically, Plaintiffs allege:

- Upon Plaintiffs' tender, Old Republic requested that Pioneer conduct an investigation into Plaintiffs' rights of access to and from the Property. Mr. Shaw admitted that he never reviewed the documentation provided by Pioneer and, to date, Old Republic has been unable to identify any documents proving the existence of a legal right of access to and from the Property. *See* Mem. in Supp. of Mtn. to Am., p. 4 (Docket No. 19, Att. 1) (citing 12/09 email correspondence, attached as Ex. B to Lloyd Aff. (Docket No. 19, Att. 4)).

- On December 28, 2009, Old Republic contacted Scott Spears, legal counsel for the Ada County Highway District ("ACHD"), supplying him with the documentation previously provided by Pioneer (*see supra*), and requesting his position regarding "access along Barnes Road to the Guenther/Ryerson land." Mr. Spears responded in a December 30, 2009 email to Mr. Shaw that, while "Mr. Guenther and Ms. Ryerson do have access to their property via a private road", "ACHD is unaware of the legal standard that defines 'legal access' to which you refer." Mr. Spears further advised Mr. Shaw of various items that would need to be "complet[ed]" before ACHD "may consider accepting and opening the dedicated portion of the Barnes Road . . . ." *See* Mem. in Supp. of Mtn. to Am., pp. 4-6 (Docket No. 19, Att. 1) (citing 12/09 email correspondence, attached as Ex. B to Lloyd Aff. (Docket No. 19, Att. 4)).

- On December 30, 2009, Mr. Shaw forwarded Mr. Spears's email of the same date to Pioneer's Jesse Hamilton and John Farmer, asking whether "the existing recorded documents provide legal access?" and stating that "[o]ur policy is correct if those recorded documents give an access for ingress and egress to the insured land." Later on December 30, 2009, Mr. Shaw emailed Messrs. Hamilton and Farmer, stating that, "in order to insure legal access by way of a private road, there should be a grant of access easement for ingress and egress that runs with the land and binds the heirs, assigns, and devisees of the grantor. Since this road is a private road is it your opinion that [Plaintiffs] ha[ve] an access easement under the recorded documents that appear to benefit our insured land?" *See* Mem.

**MEMORANDUM DECISION AND ORDER - 7**

in Supp. of Mtn. to Am., p. 4 (Docket No. 19) (citing 12/09 email correspondence, attached as Ex. B to Lloyd Aff. (Docket No. 19, Att. 4)).

• Not having heard back from Pioneer, on January 5, 2010, Mr. Shaw emailed Mr. Farmer, asking whether he "believe[d] the private road is supported by some kind of access easement that gives [Plaintiffs] legal access?" and, later that day, his "opinion on access?"  There is no record of Pioneer ever following up on Mr. Shaw's January 5, 2010 request for a more substantive analysis relating to the Property's access.  *See* Mem. in Supp. of Mtn. to Am., pp. 4-5 (Docket No. 19, Att. 1) (citing 12/09 & 1/10 email correspondence, attached as Ex. B to Lloyd Aff. (Docket No. 19, Att. 4); Shaw Dep., 100:16-25, attached as Ex. G to Lloyd Aff. (Docket No. 19, Att. 5)).

• Despite (1) not receiving confirmation from ACHD that Plaintiffs had a legal right of access to and from the Property (*see supra*), and (2) not receiving a response from Pioneer to his January 5, 2010 email inquiry (*see supra*), Old Republic nonetheless denied coverage on January 5, 2010 – the same day Mr. Shaw was still requesting information from Pioneer – stating in no uncertain terms: "Our policy agent, Pioneer [ ], has researched your title with respect to your legal access.  We find that you have legal access to your land by way of a number of recorded documents which I enclose for your information."  However, as of January 5, 2010, Mr. Shaw still "ha[d] not taken time to review" those referenced recorded documents.  *See* Mem. in Supp. of Mtn. to Am., p. 6 (Docket No. 19, Att. 1) (citing 1/5/10 Ltr., attached as Ex. C to Lloyd Aff. (Docket No. 19, Att. 4)); *see also* 1/10 email correspondence, attached as Ex. B to Lloyd Aff. (Docket No. 19, Att. 4).

With the above-referenced events in mind, the thrust of Plaintiffs' argument is that Old Republic's coverage determination was preordained, without regard to either (1) the information provided by Pioneer (which was neither reviewed in its preliminary form by Mr. Shaw nor fully analyzed, available, or complete prior to denying coverage) or (2) Mr. Shaw's own admission that policy coverage *would* apply if a recorded easement for access to and from the Property did not exist.  *See* Mem. in Supp. of Mtn. to Am., p. 7 (Docket No. 19, Att. 1) ("[I]t appears as though Old Republic was intent on denying Plaintiffs' claim, no matter what evidence or legal authority was presented to it.").  According to Plaintiffs, these circumstances warrant the addition of a punitive damages claim against Old Republic.

**MEMORANDUM DECISION AND ORDER - 8**

In response, Old Republic submits that "Plaintiffs have had continued, uninterrupted and unfettered access to the Property since they purchased it in 2009," pointing out that (1) no physical barrier has ever been placed across Barnes Main Access Road; (2) no lawsuits have been brought against Plaintiffs by any individual or entity asserting Plaintiffs' use of the Barnes Main Access Road is improper; (3) other, "upstream" property owners use the Barnes Main Access Road to reach their residences; and (4) Plaintiffs have been successfully operating a commercial grape-growing business on the Property since 2010, necessarily requiring daily access to and from the Property.  *See* Opp. to Mtn. to Am., pp. 2-4 (Docket No. 22).  According to Old Republic, this is the case because:

- In 1973, an easement existed, allowing access to the Property across Ada County property.[4]  There is no evidence that this easement was ever revoked, declared invalid, or terminated; to be sure, since 1973, the general public has never stopped using the Barnes Main Access Road.  *See* Opp. to Mtn. to Am., p. 4 (Docket No. 22) (citing Price Aff. at ¶¶ 5 & 8 and Ex. A to Price Aff. (Docket No. 29, Att. 1); Exs. 9 & 12 to Guenther Dep., attached as Exs. A & B to Slaughter Aff. (Docket No. 23, Att. 1); Ex. A to Nielsen Dec. (Docket No. 30, Att. 1); Hamilton Dep. at 59:6-59:25, attached as Ex. E to Slaughter Aff. (Docket No. 27)).

- In 1974, Plaintiffs' predecessor in interest dedicated a right-of-way to the public for the Barnes Main Access Road – including the portion that crosses Ada County property.   Though  never  formally  accepted  by  ACHD  for  purposes  of

---

[4]  The easement had a reversionary clause stating it would "revert" to the servient estate if certain improvements were not made by December 31, 1977.  *See* Opp. to Mtn. to Am., p. 4 (Docket No. 22) (citing Ex. to Guenther Dep., attached as Ex. A to Slaughter Aff. (Docket No. 23, Att. 1)).  There is no evidence available to determine whether the improvements were ever made by December 31, 1977; still, in an interesting twist to this case, Old Republic highlights the fact that, in a separate action, Plaintiffs argued that a party would be acting "arbitrarily and capriciously" if it determined the improvements were *not* made – which, thus, would have meant that the easement would not have reverted to the servient estate.  *See infra*. These arguments followed a December 9, 2009 hearing in which the Ada County Board of County Commissioners found that the easement "appears" to not have been completed and, therefore, had reverted.  *See* Opp. to Mtn. to Am., p. 4 (Docket No. 22) (citing Ex. 9 to Guenther Dep., attached as Ex. A to Slaughter Aff. (Docket No. 23, Att. 1)).

**MEMORANDUM DECISION AND ORDER - 9**

maintenance and liability, the public has traveled upon and otherwise used this right-of-way.  *See* Opp. to Mtn. to Am., p. 5 (Docket No. 29, Att. 1) (citing Ex. A to Price Aff. (Docket No. 29, Att. 1); Price Aff., ¶ 5 (Docket No. 29) ("[T]he public, including Plaintiffs, have had a right to use the entirety of Barnes Main Access Road in accordance with Idaho Code § 40-202 since it was deeded to the public in 1974.")).

• In 1984, Ada County purchased the county property and listed the easement as an exception to its Schedule B on its title insurance property.  Ada County has never taken legal action to have the easement terminated or declared invalid.  *See* Opp. to Mtn. to Am., p. 5 (Docket No. 22) (citing Ex. 53 to Hamilton Aff.)).[5]

• In 1999, Ada County issued a Property Status Report concluding that the Property and the manufactured homes on it "legally existed prior to 1985" and, therefore, are eligible for building permits in accordance with the development standards of the [Rural Preservation] zone."  *See* Opp. to Mtn. to Am., p. 5 (Docket No. 22) (citing Ex. 2 to Guenther Dep., attached as Ex. A to Slaughter Aff. (Docket No. 23, Att. 1)).

• In 2003, Ada County issued a zoning certificate and building permit for a new dwelling on a parcel adjacent to, and "upstream" from, the Property.  A home was built on that parcel and the owners have lived there ever since without any issues regarding access.  *See* Opp. to Mtn. to Am., p. 5 (Docket No. 22) (citing Ex. F to Slaughter Aff. (Docket No. 27); Guenther Dep. at 46:3-46:10, attached as Ex. A to Slaughter Aff. (Docket No. 23, Att. 1); Price Aff., ¶¶ 5 & 8 (Docket No. 29)).

• In April 2009, while Plaintiffs were negotiating the purchase of the Property, Mr. Guenther was advised that Ada County's Code had been updated since the 1999 Status Report (*see supra*); that the Barnes Main Access Road did not appear to conform to Ada County standards; and that he should "request another property status report because it could require a bit of research from staff" to determine whether the Property was eligible for a building permit.  Yet, Plaintiffs went ahead and purchased the Property in June 2009 without obtaining a new Property Status Report.  *See* Opp. to Mtn. to Am., p. 6 (Docket No. 22) (citing Exs. 2 & 4 to Guenther Dep. at 36:4-54:2 (Docket No. 23, Att. 1)).

Therefore, Old Republic submits that its decision to deny coverage was premised upon this factual backdrop of the public's (including Plaintiffs') continuous use of the Barnes Main

---

[5]  The Court could not easily locate any Hamilton Affidavit or, likewise, the referenced "Ex. 53" (as well as other referenced exhibits).  Though they may be included in the record, Plaintiffs do not dispute such offered points regardless.  Therefore, any omission is harmless in this respect.

**MEMORANDUM DECISION AND ORDER - 10**

Access Road for nearly half a century, endorsed by the various recorded instruments as well as

ACHD's (through Mr. Spears (*see supra*)) acknowledgment that Plaintiffs, in fact, have access to

the Property (albeit via a private road, not a public road).  *See* Opp. to Mtn. to Am., p. 9 (Docket

No. 22) ("All facts available to Old Republic indicated Plaintiffs had the right to access the

Property."); *see also* Shaw Aff., ¶ 3 (Docket No. 53, Att. 4) (outlining nine distinct reasons for

denying Plaintiffs' claim).[6]  In short, Old Republic doesn't just soft-peddle its conduct, it

unequivocally owns and defends it, proclaiming in absolute terms that the Policy provides no

coverage to begin with and that Mr. Shaw followed "textbook procedure" for handling Plaintiffs'

claim – indeed, Old Republic moves for summary judgment on this very point.  *See* Opp. to Mtn.

to Am., pp. 17-20 (Docket No. 22).  Absent coverage, Old Republic's argument goes, Plaintiffs

are altogether without substantive causes of action against Old Republic, *including* a companion

claim for punitive damages.

    The record offered in support of Plaintiffs' Motion for Leave to Amend Complaint and

Demand for Jury Trial – developed over many years and at significant expense – amply

demonstrates that Plaintiffs are frustrated, believing that their claim was handled poorly from the

outset and that its ultimate denial was manifestly improper when examining the events leading

up to the instant action.  However, this alone cannot justify a claim for punitive damages;

---

[6]    In support of its justification for denying Plaintiff's claim, Old Republic goes on to
discuss Plaintiffs' own conduct following the denial of their building permit application,
including:  (1) their attorney's argument before the Ada County Board of Commissioners on
December 9, 2009 that the 1999 Property Status Report was still valid and that the Barnes Main
Access Road provided public access to Hill Road; and (2) their January 22, 2010 civil action
seeking a determination that Ada County acted "arbitrarily and capriciously and without
substantial evidence in the record in concluding [that the easement] reverted to Ada County."
*See* Opp. to Mtn. to Am., pp. 7-10 (Docket No. 22) (citing Ex. 60 to Clark Depo., attached as Ex.
D to Slaughter Aff. (Docket No. 26); Ex. 9 to Guenther Dep., attached as Ex. A to Slaughter Aff.
(Docket No. 23, Att. 1)).

**MEMORANDUM DECISION AND ORDER - 11**

otherwise, punitive damages claims would "piggy-back" upon each and every bad faith claim. *See Crandall v. Hartford Cas. Ins. Co.*, 2012 WL 851102, *2 (D. Idaho 2012). More is needed.

Here, even when assuming the truth of Plaintiffs' allegations surrounding Old Republic's conduct in denying Plaintiffs' claim, there is no evidence of any *bad intent* to support a claim for punitive damages. "A breach of contract by itself is not sufficient to warrant an award of punitive damages." *Gen. Auto Parts Co. v. Genuine Parts Co.*, 979 P.2d 1207, 1211 (Idaho 1999). And, even in cases where there is evidence that a contract was intentionally breached, a claim for punitive damages requires evidence of malice on the part of the breaching party. *See id*. In the absence of bad intent, allowing Plaintiffs to pursue a claim for punitive damages is improper. The fact that Plaintiffs feel strongly that they were not well-served by their insurer, alongside evidence in the record that can be drawn upon to paint such a picture, is not enough – particularly when that evidence is contested and reasonably disputed. *See Hardenbrook*, 2009 WL 3530735, *6. Without now resolving the merits of Old Republic's decision to deny Plaintiffs' claim, at the very least, it cannot be said that Plaintiffs have demonstrated a reasonable likelihood that they could make a showing at trial – through clear and convincing evidence – that Old Republic, through Mr. Shaw, engaged in the requisite bad act, indicative of an extremely harmful state of mind (beyond, allegedly, denying Plaintiffs' claim in bad faith), needed to sustain a claim for punitive damages. Accordingly, Plaintiffs' request to add a punitive damages claim is denied, without prejudice.[7] Should this matter proceed to trial, and if

---

[7] Plaintiffs' additional reliance upon the Declaration of Robert E. Philo does not alter the undersigned's conclusion on this point. *See* Mem. in Supp. of Mtn. to Am., pp. 16-17 (Docket No. 19, Att. 1) (citing Philo Dec. (Docket No. 19, Att. 2)). In addition to Mr. Philo not being capable of definitively speaking to Old Republic's/Mr. Shaw's state of mind/intent when dealing with Plaintiffs (beyond reciting particular statutory language, independent of the propriety of Old

justified by the nature of evidence adduced at trial (as there is, to be sure, the beginnings of a punitive damages legal petri dish in the argument put forward by Plaintiffs), then the Court will consider a renewed punitive damages motion.

**B.     Defendant's Motion for Summary Judgment**
       **(Docket No. 53)**

   1.     Summary Judgment: The Standard

Summary judgment is used "to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but rather is "the principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources."  *Id*. at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

However, the evidence, including all reasonable inferences which may be drawn therefrom, must be viewed in a light most favorable to the non-moving party (*see id*. at 255) and the Court must not make credibility findings.  *Id*.  Direct testimony of the non-movant must be believed, however implausible.  *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).  On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence.  *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

---

Republic's coverage handling), his opinions must be compared against those of Old Republic's own expert, J. Bushnell Nielsen.  *Compare* Philo Expert Rpt., attached as Ex. A to Philo Dec., pp. 22-24 (Docket No. 19, Att. 2), *with* Nielsen Expert Rpt., attached as Ex. A to Nielsen Dec. (Docket No. 30, Att. 1).  For the same reasons already identified herein, doing so undermines Plaintiffs' ability to satisfy their significant burden for asserting a punitive damages claim against Old Republic.

**MEMORANDUM DECISION AND ORDER - 13**

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).  To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case.  *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in its favor.  *Anderson*, 477 U.S. at 256-57.  The non-moving party must go beyond the pleadings and show "by [its] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists.  *Celotex*, 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment."  *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)).  Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts."  *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).  A statement in a brief, unsupported by the record, cannot be used to create an issue of fact.  *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389 n. 3 (9th Cir. 1995).

2.      <u>Interpreting Insurance Contracts: The Standard</u>

Insurance policies are contracts between the insurer and the insured.  *See Mortensen v. Stewart Title Guar. Co.*, 235 P.3d 387, 392 (Idaho 2010) (citing *Hall v. Farmers Alliance Mut. Ins. Co.*, 179 P.3d 276, 280 (Idaho 2008)).  Whether an insurance policy is ambiguous is a question of law over which the court exercises free review.  *See Armstrong v. Farmers Ins. Co. of Idaho*, 205 P.3d 1203, 1205 (Idaho 2009) (citing *Purvis v. Progressive Cas. Ins. Co.*, 127 P.3d

**MEMORANDUM DECISION AND ORDER - 14**

116, 119 (Idaho 2005)) (citation omitted).  If the court finds the policy language to be

unambiguous, the court is to construe the policy as written, "and the [c]ourt by construction

cannot create a liability not assumed by the insurer nor make a new contract for the parties, or

one different from that plainly intended, nor add words to the contract of insurance to either

create or avoid liability."  *Id*.  "Unless contrary intent is shown, common, non-technical words

are given the meaning applied by laymen in daily usage – as opposed to the meaning derived

from legal usage – in order to effectuate the intent of the parties."  *Id*.  (quoting *Howard v. Ore.

Mut. Ins. Co.*, 46 P.3d 510, 513 (Idaho 2002)).  Where there is an ambiguity in an insurance

contract, special rules of construction apply to protect the insured.  *See id*. at 1206 (citing *Hall*,

179 P.3d at 281).

    In determining whether a particular provision is ambiguous, the provision must be read

within the context in which it occurs in the policy.  *See Armstrong*, 205 P.3d at 1206 (citing

*Purvis*, 127 P.3d at 119).  An insurance policy provision is ambiguous if "it is reasonably subject

to conflicting interpretations."  *North Pac. Ins. Co. v. Mai*, 939 P.2d 570, 572 (Idaho 1997).  If

an ambiguity is found, and because insurance contracts are adhesion contracts that are not

typically subject to negotiation between the parties, any ambiguity that exists in the contract is

construed most strongly against the insurer and in favor of the insured.  *See Armstrong*, 205 P.3d

at 1206 (citing *Arreguin v. Farmers Ins. Co.*, 180 P.3d 498, 500 (Idaho 2008)).  The Court also is

to construe insurance contracts "in a manner which will provide full coverage for the indicated

risks rather than to narrow its protection."  *Smith v. O/P Transp.*, 918 P.2d 281, 284 (Idaho

1996).  "The burden is on the insurer to use clear and precise language if it wishes to restrict the

scope of its coverage."  *Arreguin*, 180 P.3d at 500.  At the same time, standardized contract

**MEMORANDUM DECISION AND ORDER - 15**

language must necessarily be somewhat general, in anticipation of varying sets of the facts.  *See Axis Surplus Ins. Co. v. Lake CDA Dev.*, 2008 WL 4238966, *2 (D. Idaho 2008) (citing *Foster v. Johnstone*, 685 P.2d 802, 806 (Idaho 1984)).

      3.    <u>Discussion</u>

Despite its many moving parts, as Old Republic points out, "[t]he threshold question in this lawsuit is whether Old Republic breached the Policy."  *See* Mem. in Supp. of MSJ, p. 2 (Docket No. 53, Att. 1).  Logically, then, Old Republic's Motion for Summary Judgment largely turns upon whether, as a matter of law, it breached the Policy – in particular, whether Plaintiffs had "[n]o right of access to and from the [Property]," consistent with the Policy's "[c]overed [r]isks." Arguing to the contrary – that Plaintiffs have always had a right of access to the Property – Old Republic submits that each of Plaintiffs' corresponding causes of action (those dependent upon a breach of the Policy) must be dismissed.  *See* Mem. in Supp. of MSJ, p. 2 (Docket No. 53, Att. 1) ("To prove Old Republic breached the Policy, Plaintiffs have the burden of proving they did not have a right to access the Property.  Plaintiffs cannot meet this burden. There is no evidence supporting the contention that Plaintiffs lacked a right of access to the Property.  To the contrary, all facts (including Plaintiffs' own admissions) indicate Plaintiffs have continually enjoyed a right of access to the Property.").  Such a position naturally depends upon the meaning of "right of access."  Not surprisingly, the parties disagree on this lynchpin issue.

It is undisputed that, among other things, the Policy provides coverage in the event "no right of access to and from the [Property]" exists.  *See* Policy, p. 1, attached as Ex. A to Lloyd

**MEMORANDUM DECISION AND ORDER - 16**

Aff. (Docket No. 19, Att. 4).  Here, it is also undisputed that, since purchasing the Property in June 2009,  Plaintiffs (and other neighboring property owners) have always been capable of *physically* accessing the Property.  However, does physical access constitute "right of access" as that term is used in the Policy?  Old Republic says yes; Plaintiffs say no.

Old Republic claims that, because Plaintiffs have always been able to physically access the Property, they have likewise always had a "right of access" to and from the Property and, thus, there is no coverage under the Policy.  Plaintiffs disagree, claiming that, while they may never have been physically prevented from accessing the Property, they nonetheless had no *legal* right of access to the Property (in essence, that they *could* have been physically prevented from accessing the Property) and, without such access, there is coverage under the Policy.  Alas, the Policy does not define "right of access."

The undersigned has considered the parties' arguments and related references to the record and, pertinent to the inquiries presented by this action, finds that the Policy language does not clearly and unambiguously provide coverage only when there is no physical access to the Property as Old Republic proposes.  Had the Policy insured against losses incurred by reason of, simply, "no access" to the Property, Old Republic's argument would have more persuasive sway.  But it doesn't.  The Policy adds the term "right of" to modify the word "access" which must provide substantive meaning that Old Republic's interpretation of the Policy does not address, beyond equating it to physical access.  Therefore, while Old Republic's reading of the Policy might be a reasonable one, so is Plaintiffs' retort that coverage applies when there is no legal

**MEMORANDUM DECISION AND ORDER - 17**

access to the Property, identifying the term "right of" as meaning "legal."[8]  In other words, at the

very least, the parties have conflicting interpretations about what the Policy covers by way of

access to the Property.

Given these conflicting interpretations, the Policy is ambiguous regarding coverage.  In

such a setting, Idaho law requires that the Policy's terms in this regard be construed as a matter

of law in favor of Plaintiffs, the insureds, and against Old Republic, the insurer.  *See supra*.  As

Chief U.S. District Judge B. Lynn Winmill recently reasoned on this somewhat nuanced point

(after examining and discussing Idaho case law):

> Based on these decisions, the Court finds that although the Idaho Supreme
> Court has used some imprecise language in describing the standard for
> interpreting insurance contracts, its recent decisions confirm that "all
> ambiguities in an insurance policy are to be resolved against the insurer."
> Moreover, the Court interprets the Idaho Supreme court's decisions to require
> that the Court, not a jury, resolve an ambiguity in favor of the insured. . . . .
> It would make little sense for a court to make the initial determination on
> whether an insurance policy is ambiguous – which the Idaho Supreme Court
> unequivocally states the court must do – and then if the court finds that it is
> ambiguous, ask the jury to resolve that ambiguity, but with an instruction that
> it must do so by resolving it in favor of the insured.  Because ambiguities *must*
> be resolved in favor of the insured, it makes much more sense for the court to
> simply make that determination if and when it determines that the contract is
> ambiguous.

*Wells Cargo, Inc. v. Transport Ins. Co.*, 2012 WL 3112009, *5 (D. Idaho 2012) (emphasis in

original).  As a result, this Court determines that the Policy provides coverage in instances where

no right of access – *legal* access – exists to and from the Property.

---

[8]  Old Republic cites to *Emmert v. Stewart Title Guar. Co.*, 2012 WL 2117036 (D. Or.
2012) (adopted at 2012 WL 2117632) to support its interpretation of the Policy.  *See* Mem. in
Supp. of MSJ, p. 5 (Docket No. 53, Att. 1).  However, there, the court was tasked with
determining whether a legal access easement existed in order to determine whether coverage
existed under an insurance policy protecting against a "lack of a right of access."  *See id*. at *5-7.
*Emmert's* backdrop therefore seems to endorse this Court's handling of a similar issue.

**MEMORANDUM DECISION AND ORDER - 18**

Regardless, whether legal access to the Property existed during the relevant time period[9] remains an unsettled question on the current record.  In their briefing and during oral argument, the parties speak to this point, discussing the historical backdrop of this dispute to obliquely argue against (or in favor of, as the case may be) an easement allowing landowners like Plaintiffs legal access to their properties via the Barnes Main Access Road.  Simply put, these arguments are just too underdeveloped and dependent upon unresolved questions of fact to decide as a matter of law on Old Republic's Motion for Summary Judgment.[10]  Therefore, while it is hereby understood that the Policy provides coverage when no legal right of access to the Property exists (*see supra*), Plaintiffs must still prove that they actually had no such right (and, in doing so, contend with and rebut Old Republic's arguments to the contrary), along with their alleged, recoverable damages that resulted therefrom.[11]

---

[9]  The undersigned understands that, after the initiation of this action, a "resolution" was reached between Plaintiffs and the relevant agencies involved in the access issues with the Property.  Ultimately, an agreement was reached, whereby the ACHD will open and accept the Barnes Main Access Road as a public right of way or approved private road, thereby creating the right of access/legal access to and from the Property that, according to Plaintiffs, had been nonexistent.  *See* Mem. in Supp. of Mtn. to Am., pp. 11-12 (Docket No. 19, Att. 1).

[10]  Old Republic also advances other theories that, if accepted, would create a legal right-of-way for Plaintiffs to use the Barnes Main Access Road.  *See* Mem. in Supp. of MSJ, pp. 7-9 (Docket No. 53, Att. 1).  However, these arguments would apply to burden land owned by an entity not a party to this action.  Notwithstanding any questions of fact that may prevent a finding in favor of Old Republic on these points, the undersigned is reluctant to resolve as a matter of law claims impacting a non-party and therefore declines to do so here.

[11]  As to such damages, Old Republic argues that, even if it breached the Policy, that same Policy expressly limits damages to the lesser of (1) the amount of insurance, or (2) the difference between the value of the title, as insured, and the value of the title subject to the risk insured against by the Policy.  *See* Mem. in Supp. of MSJ, pp. 9-10 (Docket No. 53, Att. 1) (citing Policy, p. 4, attached as Ex. A to Lloyd Aff. (Docket No. 19, Att. 4)).  Old Republic then argues that Plaintiffs have testified that their property has actually increased since this action was filed, suggesting that Plaintiffs cannot recover any damages.  *See* Mem. in Supp. of MSJ, p. 10

**MEMORANDUM DECISION AND ORDER - 19**

Because a question of fact exists relating to whether Plaintiffs had a right of legal access to the Property, that same question of fact precludes the entry of summary judgment in Old Republic's favor as to those claims dependent upon the Policy's underlying breach.[12]  Therefore, Old Republic's Motion for Summary Judgment is denied on this basis, leaving intact Plaintiffs claims for:  (1) Declaratory Judgment - Policy Coverage Applies (Count 2); (2) Bad Faith Tort (Count 3); (3) Breach of Contract (Count 4); (4) Negligence (Count 5);[13] (5) Breach of Fiduciary

---

(Docket No. 53, Att. 1).  However, these limitations do not apply in breach of contract actions, as is the case here.  *See, e.g.,* Opp. to MSJ, pp. 3 (Docket No. 69) ("[A]n insurer who is guilty of a breach of its policy obligations may not simply point to the policy to insulate itself from consequential damages."); *see also id.* at pp. 21-22 (discussing Old Republic's "internal manuals" which state: "The erring insurance company may suffer various consequences, including but not limited to: the damages due the insured may not be limited to the face amount of the policy; wrongful refusal to defend the insured may deprive the Company of policy defenses; and the insured may recover actual and punitive damages for the Company's bad faith actions.") (citing Ex. B to Lloyd Aff. (Docket No. 66, Att. 6)).  In any event, Mr. Guenther testifies that, "[w]ithout legal access to and from the Property, which we have learned was necessary in order to obtain any building or zoning permits, including grading permits, the value of our Property was worthless and title was therefore unmarketable."  *See* Guenther Aff., ¶ 46 (Docket No. 66, Att. 1).

[12]  According to Plaintiffs, the Policy was additionally breached when Old Republic refused to accept their tender of defense.  *See* Compl., ¶ 59 (Docket No. 1, Att. 5).  According to the Policy, Old Republic "shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured.  This obligation is limited to only those stated causes of action alleging matters insured against by this policy."  *See* Policy, p. 4, attached as Ex. A to Lloyd Aff. (Docket No. 19, Att. 4).  Applying the standard for interpreting insurance contracts to such a provision (*see supra*), such language unambiguously applies in the event a "third party" asserts a "claim" or "cause of action" covered by the Policy during "litigation."  Despite Plaintiffs' arguments to the contrary speaking to the December 2009 land use proceedings before the Ada County Board of Commissioners (*see supra*), this never happened.  Though similarities do exist (and Plaintiffs do a fine job of attempting to fit the proverbial square peg in a round hole), in the undersigned's mind, no third party has ever asserted claims/causes of action covered by the Policy during the course of litigation.  Without such preconditions, there can be no breach.  Old Republic's Motion for Summary Judgment is therefore granted in this limited respect.

[13]  Old Republic's separate arguments challenging the availability of Plaintiffs' negligence claims are without merit based upon the existing record.  *See* Mem. in Supp. of MSJ, p. 16 (Docket No. 53, Att. 1).  First, a 4-year, rather than 2-year, limitations period applies.  *See* Idaho Code § 5-224.  Second, even though Idaho law "does not create a duty upon the part of

**MEMORANDUM DECISION AND ORDER - 20**

Duty (Count 6);[14] (6) Breach of Implied Covenant of Good Faith And Fair Dealing (Count 7);

and (7) Intentional Infliction of Emotional Distress (Count 8).[15, 16]

_____

title insurers to conduct a reasonable search and inspection of title" (*see Brown's Tie & Lumber Co. v. Chicago Title Co. of Idaho*, 764 P.2d 423, 427 (Idaho 1988)), the fact remains that, in Idaho, "[n]o title insurance on real property . . . shall be issued unless and until the title insurer . . . has caused to be made a search and examination of the title and a determination of insurability of title in accordance with sound title underwriting practices." Idaho Code § 41-2708(1)(b). Finally, Plaintiffs imply in their briefing that they have suffered personal injury. *See* Opp. to MSJ, p. 23 (Docket No. 69). Damages relating to injuries are not purely economic losses and, therefore, beyond the reach of Idaho's economic loss doctrine. *See Brian and Christie, Inc. v. Leishman Elec., Inc.*, 244 P.3d 166, 172 (Idaho 2010) (citing *Duffin v. Idaho Crop Imp. Ass'n*, 895 P.2d 1195, 1200 (Idaho 1995)). Old Republic does not respond to Plaintiff's counter arguments in these above-referenced respects. To the extent the record further develops to warrant the revisitation of Idaho's economic loss doctrine to Plaintiffs' tort claims, the Court retains the right to do so.

[14] Old Republic's separately argues that "Idaho law precludes tort claims[, including breach of fiduciary duty] stemming from an insurer-insured relationship." Mem. in Supp. of MSJ, p. 17 (Docket No. 53, Att. 1). However, the cases cited for that proposition do not state such a matter-of-fact conclusion. *Contra Mitchell v. Barendregt*, 820 P.2d 707, 714 (Idaho Ct. App. 1991) ("Examples of relationships from which the law will impose fiduciary obligations on the parties include when the parties are: members of the same family, partners, attorney and client, executor and beneficiary of an estate, principal and agent, insurer and insured, or close friends."). Old Republic does not respond to Plaintiff's counter arguments in these respects.

[15] Old Republic separately argues, among other things, that its conduct is not sufficiently extreme and outrageous to warrant an intentional infliction of emotional distress claim. *See* Mem. in Supp. of MSJ, p. 19 (Docket No. 53, Att. 1). The undersigned agrees. To be actionable, the questioned conduct must be so extreme as to "arouse an average member of the community to resentment against the defendant," and "must be more than unreasonable, unkind, or unfair." *Mortensen*, 235 P.3d at 397. It must rise to the level of "atrocious" behavior "beyond all possible bounds of decency." *Edmondson*, 75 P.3d 733, 741 (Idaho 2003). Consistent with this Memorandum Decision and Order's handling of Plaintiffs' efforts to add a claim for punitive damages (*see supra*), Old Republic's conduct was not extreme and outrageous. *See Brown v. Fritz*, 699 P.2d 1371, 1376 (Idaho 1985) ("We note the close parallel between allowable damages for breach of contract under the terminology of 'emotional distress' and for punitive damages."). As such, Plaintiffs' intentional infliction claim is dismissed; Old Republic's Motion for Summary Judgment is granted in this limited respect.

[16] The Court's consideration of Old Republic's Motion for Summary Judgment did not require that the Court consider the issues raised within (1) Plaintiffs' Motion to Strike Portions of Affidavit of Ruth Browning (Docket No. 64), and (2) Defendant's Motion to Strike Portions of Affidavit of Joseph Guenther in Opposition to Defendant's Motion for Summary Judgment (Docket No. 71). Therefore, these latter two motions are denied as moot.

**MEMORANDUM DECISION AND ORDER - 21**

## III.  ORDER[17]

Based upon the foregoing, IT IS HEREBY ORDERED that:

1.      Plaintiffs' Motion for Leave to Amend Complaint and Demand for Jury Trial (Docket No. 19) is DENIED, without prejudice;

2.      Defendant's Motion for Summary Judgment (Docket No. 53) is DENIED, except as follows:

      a.      Plaintiffs' breach of contract claim premised upon Defendant's alleged refusal to accept a tender of defense is dismissed.  Defendant's Motion for Summary Judgment is GRANTED in this limited respect.

      b.      Plaintiffs intentional infliction of emotional distress claim is dismissed. Defendant's Motion for Summary Judgment is GRANTED in this respect.

3.      Plaintiffs' Motion to Strike Portions of Affidavit of Ruth Browning (Docket No. 64) is DENIED as moot.

4.      Defendant's Motion to Strike Portions of Affidavit of Joseph Guenther in Opposition to Defendant's Motion for Summary Judgment (Docket No. 71) is DENIED as moot.



DATED:  **September 26, 2013**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge

---

[17]  The undersigned is aware that the parties previously participated in a settlement conference nearly a year ago.  Recognizing that this Memorandum Decision and Order may have settled at least some of the waters that prevented a resolution previously, the parties are encouraged to revisit the idea of a second settlement conference or some other alternative dispute resolution avenue.